IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE SUBPOENA TO THE CME GROUP, INC., ) | |
| ) | |
| In connection with ) | No. 10 C 4675 |
| In Re: Genetically Modified Rice Litigation ) | |
| ) | Judge Robert W. Gettleman |
| Case No. 4:06 MD 1811 CDP ) | |
| (pending in the Eastern District of Missouri, ) | |
| Eastern Division ) | |

## MEMORANDUM OPINION AND ORDER

Bayer CropScience LP ("Bayer"), a defendant in a multidistrict litigation ("MDL") pending in United States District Court for the Eastern District of Missouri, seeks to compel compliance with a subpoena of a list of clients of non-party CME Group, Inc. ("CME") pursuant to Fed. R. of Civ. P. 45. Specifically, Bayer seeks a list of the names and addresses of "large traders" in rough rice futures contracts listed on the Chicago Board of Trade ("CBOT") from August 1 through 18, 2006. For the reasons stated below, Bayer's motion to compel discovery is granted.

## BACKGROUND

The MDL (<u>Bell v. Bayer Cropscience LP</u>, No. 4:06 MD 1181 CDP (E.D. Mo.) arose from several consolidated cases surrounding Bayer's alleged development and growth of genetically-modified rice. The plaintiffs in the MDL allege that Bayer contaminated conventional U.S. rice supplies with genetically-modified rice, making the rice unsuitable to export to certain countries. The plaintiffs, mostly rice growers, allege that they suffered damage when the U.S. Department of Agriculture (USDA) reported Bayer's alleged contamination to the public and the price of rice plummeted.

Other rice growers previously filed suit against Bayer in state court over the same conduct. In one suit in Arkansas, *Randy Schafer, et al. v. Bayer CropScience LP, et al.*, No. CV 2006-413 (Lonoke County Ct., Ark.), the issue of alleged insider trading arose during the testimony of one of the plaintiffs' experts. The expert testified to the fact that the purchase of rough rice futures contracts on the commodities market spiked between August 2, 2006, when Bayer reported the contamination to the USDA, and August 18, 2006, when the USDA disclosed the contamination to the general public. The expert opined that such an increase was probably caused the purchase of futures contracts by a party with inside information as to the contamination. During the proceedings, the Arkansas state court expressed concern that insider trading was becoming a distraction to the principal issues in the litigation: "The issue is not whether or not there was insider trading . . . . That may very well be relevant to damages issues, but the issue of insider trading is not relevant to this case." Therefore, the court instructed the jury to avoid any consideration of insider trading in making its decision regarding Bayer's liability.

In the instant case, Bayer seeks the list of large traders from CME, the owner of the CBOT, so that it can establish that it did not purchase a large volume of rough rice futures in the period suggested by the expert. Bayer alleges that this information is relevant to the MDL because it could potentially reduce the damages for which Bayer may be liable. CME argues that it should not be compelled to disclose the list because it is irrelevant for purposes of discovery under Fed. R. Civ. P. 26(b)(1) and, alternatively, that Bayer has other means of obtaining the information that are less burdensome and prejudicial to CME and its clients. If it is

compelled to disclose the list, CME argues that notice should be at least given to the persons on the list.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." CME does not contest Bayer's assertion that the list of large traders of rough rice futures is not protected by the qualified investigatory privilege. Thus, the court need only consider whether it is relevant to the MDL. "Relevance" for purposes of discovery is broader than relevance during trial, and a district court deciding on the relevance of a subpoena for litigation pending in another district should be "especially hesitant to pass judgment on what constitutes relevant evidence." *Channelmark Corp. v. Destination Products Int'l, Inc.*, No. 99 C 214, 2000 WL 968818, at *2 (N.D. Ill. July 7, 2000) (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)).

CME first argues that the list of large traders is not relevant because the Arkansas state court opinion specifically stated that insider trading was irrelevant to the rice contamination litigation. CME argues that, since the MDL is based upon the same set of facts as the state court proceeding, the Arkansas state court's statement demonstrates that insider trading is not relevant to the MDL. This argument, however, fails to note that the Arkansas state court also stated that insider trading "may very well be relevant to damages issues."

Moreover, the Arkansas state court referred to "relevance" in relation to trial. As previously noted, "relevance" is more broadly construed during discovery than during trial. *Clark v. Experian Information Solutions, Inc.*, No. 03 C 7882, 2006 WL 931677, at *3 (N.D. Ill. Apr. 10, 2006). In many other instances, courts have found information bearing on potential

3

damages relevant for purposes of discovery.  *E.g.*, *EEOC v. Staffing Network*, No. 02 C 1591, 2002 WL 31473840, at *1, *3 (N.D. Ill. Nov. 4, 2002) (finding company's financial and tax records relevant to calculation of punitive damages in Title VII case); *Kiermeier v. Woodfield Nissan, Inc.*, No. 98 C 3260, 1999 WL 759485, at *1-*2 (N.D. Ill. Sept. 7, 1999) (finding plaintiff's psychological treatment records relevant when plaintiff sought damages for psychological injuries); *Zerostat Components, Ltd. v. Shure Bros., Inc.*, No. 80 C 1505, 1982 WL 63776, at *1 (N.D. Ill. Oct. 20, 1982) (compelling discovery of defendant company's earnings and profits in patent infringement case because "[t]he issues of liability and damages [had] not been bifurcated for trial, and even if they [had been], this court has held that discovery on the issue of damages should not be deferred").

Although the statements of the Arkansas state court do not bind determinations of relevance for the MDL, that court's statement demonstrates the possibility that insider trading may arise in the federal cases.  Given the broad definition of relevance in Rule 26(b)(1), this possibility is sufficient to allow discovery the list of large traders in rough rice futures.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (stating that "relevance" in discovery is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

CME also argues that Bayer can access the information sought through other, easier means. CME argues that Bayer could produce its own witness to testify that it did not trade rough rice futures during the period in question.  CME also offers to provide a sworn statement that Bayer is not on the list of large traders in rough rice futures.  CME contends that these alternatives are preferable to both parties than the release of the large trader list, which it

4

contends is highly confidential. In support of this contention, CME cites the Commodity Exchange Act, which provides for confidentiality of the transactions and market positions of commodity traders. 7 U.S.C. § 12(a)(1) (2006). CME also cites the regulations of the Commodity Futures Trading Commission, which exempt from public disclosure information that would disclose the business transactions or market positions of commodity traders. 17 C.F.R. § 145.5(c)(1). CME, in essence, argues that the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(I).

CME's argument as to its clients' confidentiality fails for several reasons. First, the MDL is under a protective order. Thus, any confidential information disclosed by CME will remain confidential. Second, the Commodity Exchange Act provides for release of transactions and market positions pursuant to a subpoena. 7 U.S.C. § 12(f) (2006). Third, CME's own Confidentiality Policy instructs its client that "[c]onfidential information may also be released pursuant to: . . . [a] valid subpoena or order of the court that directs CME Group to release such confidential information." CME Group, Confidentiality Policy for Market Regulation and Audit Departments, Dec. 1, 2009, *available at* http://www.cmegroup.com/ market-regulation/overview/files/confidentialitypolicy.pdf. Fourth, Bayer's request is tailored to encompass only large traders in rough rice futures, and only for an eighteen-day period. Finally, the court notes that in another case in this district, CME agree to provide a similar list of the names and addresses of traders in certain futures contracts pursuant to a subpoena. *Kohen v. Pacific Inv. Mgmt. Co.*, No. 05 C 4681, Doc. 203 (N.D. Ill. 2006). Thus, CME's clients will be relatively unburdened and unprejudiced by the production of the list because they were on notice

that a subpoena or court order might disclose their information, and the narrow scope of Bayer's request impacts only a few traders.

In the alternative, CME argues that notice should at least be given to the large traders on the list. CME fails to allege what purpose such notice would serve. As previously noted, the protective order in the MDL will prevent any of their names from being released to the public at large. Moreover, the large traders on the list are already on notice that their information may be disclosed pursuant to a subpoena, as evidenced by the provisions of both the Commodity Exchange Act and CME's Confidentiality Policy, which provide for disclosure of information pursuant to a valid subpoena or court order.

## **CONCLUSION**

For all of the reasons stated herein, Bayer's motion to compel compliance with a subpoena pursuant to Rule 45 is granted.


**ENTER:** October 7, 2010

_____
**Robert W. Gettleman**
**United States District Judge**